**MERCADO v. UNITED STATES.**

No. 244, Docket 21693.

United States Court of Appeals
Second Circuit.

Argued June 7, 1950.

Decided July 13, 1950.

Louis R. Harolds, of New York City (William L. Standard, of New York City, on the brief), for libellant.

Joseph M. Brush, of New York City (Irving H. Saypol, U. S. Atty., and Barry, Wainwright, Thacher & Symmers and Edward C. Kalaidjian, all of New York City, on the brief), for respondent.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

Libellant, a former wiper on the S. S. Charles Sumner, sued the United States, as owner of the vessel, to recover for personal injuries allegedly sustained on two separate occasions during his employment upon it. As a first cause of action the libellant alleged that he was injured about 2:00 p.m. on December 27, 1944, while the vessel was at sea. As a second cause of action he then alleged that he was injured on January 13, 1945, when he slipped and fell on the dock near the foot of the gangway as the vessel lay alongside a quay at Antwerp,

Belgium. The district court after trial dismissed the second claim with respect to the gangway accident, but awarded libellant $2,500 upon his first claim. Respondent appeals from the award to the libellant of damages and maintenance and cure on this claim. Libellant appeals from the dismissal of his second claim and the limiting of his recovery on the first to $2,500.

### First Claim

Libellant testified that about 2:00 p. m. on December 27, 1944, he went with the second assistant engineer to sound the tanks. As they were going through a doorway leading from the engine room libellant slipped and fell in a pool of oil, injuring his right knee. According to his testimony the second assistant engineer, who had preceded him through the doorway, helped him up and told him that he would be all right. He did not seek treatment for his knee until three weeks after the end of the voyage, in March, 1945; nor was any report made of the alleged mishap. Against this the second engineer testified that so far as he knew libellant had not been injured while aboard the vessel. He testified further that he was otherwise occupied at the time the fall is alleged to have occurred, that because of rough seas the tanks would not have been sounded at that time, and that when he did sound the tanks he rarely had a wiper to accompany him. He specifically denied that libellant had ever fallen in his presence or that he had ever helped libellant up after a fall. The trial judge said with regard to this witness, "On that state of the case I am quite satisfied that I would find as a fact the second engineer was telling the truth."

█ It is thus apparent that the primary issue is one of veracity. And respondent did make a serious attack on libellant's credibility, forcing him eventually to admit that he had testified falsely in disclaiming the making of similar claims against other vessels and also showing a sworn statement made by him to another shipowner likewise disclaiming any other claim. But the experienced trial judge was convinced, as he said during the trial and found later in his decision, that the accident oc-

curred as libellant claimed; and in accordance with our settled rule we have no occasion to disturb this finding. We add, too, with respect to libellant's claim of inadequacy of the damages allowed, that we have no occasion to disturb the finding of contributory negligence which led to the limited award. The case would therefore call for affirmance save for a *contretemps* occurring as to the admission of a deposition, and resulting from the confusion due to the failure to adopt the civil rules (more than partially) in admiralty and a not unnatural belief to the contrary on the part of the Judicial Code revisers.

In a sworn answer to an interrogatory, libellant had stated that the second assistant engineer was the only person present at the time of the fall. But three days before the trial libellant took the deposition of one Ariello Pecchia, a former crew member of the vessel, who claimed to have seen the accident and testified that it was as libellant had alleged. Pecchia resided in Bergenfield, New Jersey, less than one hundred miles from the place of trial. The deposition was taken in the law office of libellant's counsel in New York City, and respondent was represented by associate counsel who cross-examined the witness at length. When libellant offered the deposition at the trial, respondent objected on the basis of the provision of the *de bene esse* statutes, Rev.Stat. § 865, the former 28 U.S.C.A. § 641, that "unless it appears to the satisfaction of the court that the witness is then dead, or gone out of the United States, or to a greater distance than one hundred miles from the place where the court is sitting, or that, by reason of age, sickness, bodily infirmity, or imprisonment, he is unable to travel and appear at court, such deposition shall not be used in the cause." The trial judge characterized the objection as "rather technical" and, upon learning that respondent had cross-examined the witness, overruled the objection and admitted the deposition.

██ It is impossible for us to tell how much weight the judge gave the Pecchia deposition in making his findings. At one point in the trial he seemed to indicate some doubts about the value of the deposition,

saying, "It seemed to me he spread it on awfully thick." But he did not definitely reject the testimony, and in view of the sharp conflict in the evidence we are hardly justified in concluding that he would have found as he did without the deposition. Nor can we find a waiver on the part of the respondent. The actual facts do not point to any intent to waive all objections; nor does the modern law, stressing depositions for the purpose of discovery as well as the production of evidence, require more than an objection at the trial if and when the deposition is offered in evidence. Compare Federal Rules of Civil Procedure, rule 26(e), 28 U.S.C.A. Hence we must review the court's ruling in admitting it.

■ The exigencies of argument force each side to a certain extent at once to rely upon and to repudiate the civil rules in admiralty. Libellant's basic point is that he could not subpoena the witness, pointing out that the long existing provision, Rev. Stat. § 876, the former 28 U.S.C.A. § 654, from Act of March 2, 1793, c. 22, § 6, 1 Stat. 335, which granted district courts power to subpoena witnesses living without the district, but within one hundred miles of the place of trial in civil causes, had been repealed on the adoption of the new code. This is so expressly stated in the Schedule of Laws Repealed, Act of June 25, 1948, c. 646, § 39, 62 Stat. 992, 993. The reason for this seems obvious and is stated in various places, e. g., in Parallel Table of Sections for Title 28, Federal Rules of Civil Procedure and New Title 28, U.S. Code Judiciary and Judicial Procedure, 158, West Pub. Co., 1950 Rev.Ed.; 3 Moore's Federal Practice, 1948 Cum.Supp. 97; Note to § 654, Tit. 28, in United States Code, 1946 Ed.; it was thought to be covered by Federal Rules of Civil Procedure, rule 45 (e) (1), and Federal Rules of Criminal Procedure, rule 17(e), 18 U.S.C.A., which were improved restatements of the old statute. See Advisory Committee's Notes to the civil rule. And respondent asserts that the witness was "obviously within the subpoena power of the court" as defined in the civil rule. But the civil rules do not apply in admiralty except as specifically adopted, Federal Rules of Civil Procedure, rule 81(a)

(1); and this rule was not one of those adopted. Indeed it could hardly have been before the new code, which for the first time granted complete rule-making authority in admiralty to the Supreme Court, with power to supersede existing statutes. Compare the present 28 U.S.C.A. § 2073 with the former 28 U.S.C.A. § 723, also §§ 637 and 730. Hence we have the anomalous situation that at the moment this important subpoena power is uniquely lacking in admiralty.

■ If thus this witness could not be subpoenaed for the actual trial, the natural course would be to use his deposition, just as the civil rules permit. And again we find a nice confusion, since a part, but only a part, of the deposition rules have been adopted in admiralty. But before we pass to this we should note the neat intertwining of the old subpoena provision with the *de bene esse* statute and the hiatus left by the repeal of the former: If, formerly, he lived within one hundred miles of the court, he could be subpoenaed; if he lived farther away, his deposition could be used. The latter still appears to be true. While the statute authorizing depositions *de bene esse* is not re-enacted anywhere as a part of the new Title 28, U.S. Code—doubtless because of the complete and superseding provisions of F.R.C.P. 26—yet it is not contained in the schedule of repealed laws supra. Since this schedule was carefully checked and rechecked, H.R.Rep. No. 308, 80th Cong., 1st Sess. 1947, Tit. 28, U.S. Code Cong. Serv. 1948, 1692, at p. 1699, we may take this as deliberate and hence the statute still applies in admiralty. Indeed, this is the conclusion stated in 28 U.S.C.A., the note preceding § 1781 and in the note to former 28 U.S.C.A. § 641 in the 1948 Cumulative Annual Pocket Part.

In 1939 the Supreme Court adopted certain of the civil deposition rules in admiralty. Thus Admiralty Rules 31, 32, 32A, 32B, and 32C, 28 U.S.C.A., are F.R.C.P. 33, 34, 35, 36, and 37. These cover the provisions for interrogatories to parties, the production of documents, physical and mental examinations, admissions, and the consequences of refusal to make discovery. But the court, whether because of doubt as to

its authority or for other cause, did not adopt the basic deposition rule, F.R.C.P. 26, which provides for not only the general taking of depositions pending action, but also their scope and the conditions under which they can be admitted in evidence. This rule extends admissibility beyond the *de bene esse* statute in at least two particulars here important. Thus F.R.C.P. 26(d) (3), subd. 4, makes a deposition admissible when the party offering it "has been unable to procure the attendance of the witness by subpoena," while id. 5 gives the judge authority to admit the deposition where other grounds are unavailable upon a finding "that such exceptional circumstances exist as to make it desirable, in the interest of justice" and with due regard to the importance of oral testimony in open court.[1] The basic nature of Rule 26 was confirmed by the amendments effective in 1948, e. g., of Rules 33 and 34, which referred back to Rule 26 for the conditions of their use.

■ Notwithstanding this omission, Admiralty Rule 32C provides, in language identical with F.R.C.P. 37(a): "If a party or other deponent refuses to answer any question propounded upon oral examination, the examination shall be completed on other matters or adjourned, as the proponent of the question may prefer. Thereafter, on reasonable notice to all persons affected thereby, he may apply to the court in the district where the deposition is taken for an order compelling an answer." In Brown v. Isthmian S. S. Corp., D.C.E.D. Pa., 79 F.Supp. 701, Judge Kirkpatrick held that it is inconceivable that the Supreme Court, by means of the elaborate and detailed terms of Admiralty Rule 32C, would have given a suitor in admiralty a method of enforcing a right which did not exist. So he inferred that the penalties for failure to answer questions on oral examination imply that oral examination is available in admiralty. Other judges have followed this rather reasonable view in The Ballantrae, D.C.N.J., 1949 A.M.C. 1999,* Galperin v. United States, D.C.E.D.N.Y., 1949 A.M.

C. 1907,[1] and Bunge Corp. v. S. S. Ourania Gouranis, D.C.S.D.N.Y., 1949 A.M.C. 744.*

A contrary view was taken, however, by Judge Rifkind in a well reasoned opinion, Mulligan v. United States, D.C.S.D.N.Y., 87 F.Supp. 79, in accord with which is Gulf Oil Corp. v. Alcoa S. S. Co., D.C.S.D.N.Y., 1949 A.M.C. 1965. Judge Rifkind suggested that there are three possible explanations for the omission from the Admiralty Rules of a provision corresponding to F.R.C.P. 26 and the simultaneous provision, under Admiralty Rule 32C, of penalties for failure to answer a question on oral examination. First, the right to oral examination for purposes of discovery might be thought such an established part of admiralty practice that explicit provision for it was unnecessary; this, however, he found not to be in accord with the facts of history, citing 3 Benedict on Admiralty 34, 6th ed. 1940. Second, it was not intended to introduce oral examinations into admiralty, and the inclusion in Admiralty Rule 32C of the language of F.R. C.P. 37(a) dealing with oral examination was an oversight. And third, the revisers did not intend to authorize oral discovery proceedings and the reference in Admiralty Rule 32C to oral examinations relates to the kind of oral examination permissible in admiralty under the *de bene esse* statutes, the former 28 U.S.C.A. §§ 639–641. While this reading gives to the words of Admiralty Rule 32C a different content than the same words have in F.R.C.P. 37(a), Judge Rifkind thought it preferable because it avoided the necessity of attributing to the proponents of these amendments to the Admiralty Rules and to the Supreme Court action based upon either a historical inaccuracy or a careless inclusion in Admiralty Rule 32C of inapplicable language borrowed from F. R.C.P. 37.

Thus, by chance rather than design, there has developed a quite troublesome, though rather unnecessary, question of practice, as the judges in the Southern District have recognized by attempting to correct it so far

1. Libellant also attempts to justify admissibility under N. Y. Civil Practice Act § 304. While this would appear to make the deposition admissible in the state courts, there is no basis for carrying the state rule over into federal procedure.

* Oral.

as they can by recent local rule.[2] We are tempted to cut the Gordian knot by forthrightly applying the modern federal practice as we have done in substance in other cases. Boston Ins. Co. v. City of New York, 2 Cir., 130 F.2d 156; Schiavone-Bonomo Corp. v. Buffalo Barge Towing Corp., 2 Cir., 134 F.2d 1022, certiorari denied 320 U.S. 749, 64 S.Ct. 53, 88 L.Ed. 445; Untersinger v. United States, 2 Cir., 172 F.2d 298, 300; Esso Standard Oil Co. v. United States, 2 Cir., 174 F.2d 182, 186. There is the more reason for so doing because it seems the only condition which holds this case on the admiralty side of the federal court is the sovereign nature of the defendant. Though the action here was originally grounded upon negligence under the Jones Act, 46 U.S. C.A. § 688, and unseaworthiness under the general maritime law, the true ground appears to be negligence and the judge expressed the belief that this was a Jones Act case. We have repeatedly allowed the shift from admiralty to law or vice versa without the need of a new action, Cannella v. Lykes Bros. S. S. Co., 2 Cir., 174 F.2d 794, 797, certiorari denied 338 U.S. 859, 70 S.Ct. 102; James Richardson & Sons v. Conners Marine Co., 2 Cir., 141 F.2d 226, 230; and as against a private litigant, the shift here to obtain the benefit of F.R.C.P. 26 would seem natural and normal. But claims under the Jones Act against the United States can be enforced only through the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., and the seaman does not have the usual option of proceeding either at law or in admiralty. Johnson v. U. S. Shipping Board Emergency Fleet Corp., 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451; Untersinger v. United States, supra; Robinson on Admiralty 324, 325, 1939. Hence the exclusion of this deposition must be on narrow grounds indeed.

Nevertheless we are not directly a reform organization, and under the usual ground rules for judicial action it is diffi-cult to get away from Judge Rifkind's construction as a method of rationalizing the diverse provisions before us. We are the more constrained to this regrettable conclusion because a doubtful extension of the civil rules in admiralty may cause more confusion than a clean-cut decision demonstrating the need of revision. To our minds this case shows the desirability of making the civil rules directly applicable in admiralty (with of course such additions on peculiar subjects, such as limitation of liability, as may be needed) without the confusion and question which may follow from a recopying of parts. At the very least the adoption of the subpoena rule, F.R.C.P. 45(e), if not of the deposition rule, F.R.C.P. 26, seems a necessity. Meanwhile we are constrained to hold that the reference to oral examination in Admiralty Rule 32C is only to that taken by virtue of the de bene esse statutes which remain applicable in admiralty, and that depositions are not admissible in evidence except as provided in those statutes. Hence we must find error in the admission of this deposition; and since we cannot be sure how far the error permeated the result, we must reverse the decree on this claim and remand it for further consideration by the judge. He should make new findings, either on the basis of the present record exclusive of the deposition or upon the receipt of new evidence as he shall find justice to require. And this he should follow with the appropriate judgment.

### Second Claim

With reference to the second accident, that of January 13, 1945, the trial judge made the following findings:

"11. On January 13, 1945 at about 8 P. M., libellant sustained another accident as he was leaving the ship to go on shore leave in the Port of Antwerp. On that occasion he slipped on snow and ice which had accumulated on the lower steps of the gangway,

2. Local Admiralty Rule 46 of the United States District Court for the Southern District of New York, adopted May 10, 1950, provides that the taking and use of depositions shall be governed by the Federal Rules of Civil Procedure except that their use as evidence shall be under three stated conditions which, so far as the present situation is concerned, coincide with those of the de bene esse statute. The court properly hesitated to go further, since only the Supreme Court has the authority to supersede statutes. 28 U.S.C.A. § 2073 supra.

where the light did not quite reach, and he fell over the railroad tracks which ran alongside the foot of the gangway. The momentum of his slipping caused him to fall forward, and his mouth struck one of the railroad tracks, loosening four front teeth, lacerating his mouth and spraining his left wrist.

"12. It had stopped snowing that morning, and, in addition, members of the crew and other workmen carried some snow on their shoes from the pier onto the steps of the gangway, during the course of the day.

"13. Libellant did not receive any medical treatment for the accident of January 13, 1945, except for the fact that the four teeth which he lost as a result of that fall, were replaced for him at the Marine Hospital without charge.

"14. Under the conditions disclosed, the respondent was not at fault for the accident of January 13, 1945."

Libellant and respondent appear agreed that these findings are in accord with the evidence. On the basis of these findings, we think that the court erred in dismissing the second cause of action. The testimony that there was snow on the gangway was uncontradicted. There is no evidence that respondent made any effort to sand the gangway or clean off the snow after the first cleaning of the early morning hours. This seems clearly negligent. In its brief, respondent's only argument with regard to the second cause of action is that the accident occurred on the quay during wartime operations and the libellant had signed a log book entry to the effect that he was not looking where he was going when he fell. This is insufficient to justify dismissing the claim. The trial judge found as a fact that respondent had failed to provide a light which reached to the lower steps of the gangway, which is where the mishap occurred. Under the circumstances it would have done libellant little good to have looked where he was going, since there was no light there by which he could see this dangerous condition anyhow. Since, therefore, this claim was erroneously dismissed, we reverse and remand it to the district court for the award of damages by the district judge.

On each appeal, judgment reversed and action remanded for further proceedings as directed in the opinion.